Reynolds, Auditor, *et al. v.* Bowen, Administrator.

No. 16,577.

Reynolds, Auditor, et al. *v.* Bowen, Administrator.

Taxes.—*Omitted Property.*—*Power of County Auditor to Assess.*—*Information.*—In making assessment of omitted property, the county auditor may act upon any information, written or oral, or even upon his own belief.

Same.—*Omitted Property.*—*Notice.*—*Description.*—The notice of intention to assess, by the auditor, need describe the property only in general terms.

Same.—*Taxing Statutes Liberally Construed.*—The power to assess is a summary one, and to secure uniform and just taxation, and to protect the revenues of the State, and in the interests of honest taxpayers, it is necessary that assessment statutes should be liberally interpreted in aid of the taxing power.

Same.—*Suit to Cancel Taxes Levied on Omitted Property.*—*Insufficiency of Complaint.*—*Failure to Come into Equity with Clean Hands.*—Where an administrator brings suit to cancel certain taxes assessed against omitted property of his decedent, by the county auditor, the administrator must show, in his complaint, that he has done equity, before he is entitled to equitable relief; and where the administrator makes no pretense that the original assessment was

Reynolds, Auditor, *et al. v.* Bowen, Administrator.

a fair or just one, or that the decedent had, in fact, given in all his property for taxation, the complaint is insufficient on demurrer for want of facts.

Same.—*Omitted Property.—When Notice Should be Served on Administrator.*—The personal representative of a decedent is the proper person to receive notice of intention to assess omitted property from the assessment of his decedent.

Same.— *When Irregularities do not Affect Assessment.*—Irregularities do not affect the correctness of a tax assessment, if the proceedings are substantially correct, and the assessment is fair and just.

Same.— *Omitted Property.—Right of County Auditor to Assess.—Reënactment of Old Section (1881) in New Statute (1891).—Effect.*— That section of the tax law of 1881 authorizing the assessment of omitted property by the auditor, was reënacted, *verbatim*, in the tax law of 1891; and the reënactment of such section in the new law has the effect to keep such section of the old law in force without interruption, even though the old law was expressly repealed.

From the Carroll Circuit Court.

*M. A. Ryan, J. H. Gould* and *G. R. Eldridge,* for appellants.

*R. C. Pollard, C. R. Pollard* and *M. Winfield,* for appellee.

Howard, C. J.—On the 17th day of September, 1891, the appellee began this action against the appellants, by filing in the Carroll Circuit Court his complaint in three paragraphs, asking for the cancellation of certain taxes charged against his decedent's estate.

The questions presented by the record arise upon the overruling of appellants' demurrers to the complaint. The appellants refusing to plead further, judgment was rendered against them, and the auditor and treasurer were ordered to cancel and "strike from the tax-duplicate of Carroll county, Indiana, the several amounts so placed upon said duplicate by said auditor as omitted property."

From the transcript of the proceedings before the auditor, which is set out in the complaint, it appears that

the auditor, having received information that certain personal property of the decedent had not been listed for taxation for the years from 1881 to 1889, inclusive, issued to the administrator a written notice requiring him to appear and show cause why such omitted property should not be added to the tax-duplicate.

In response to this notice, the administrator appeared before the auditor, and moved to set aside the notice as insufficient, which motion was overruled by the auditor.

The administrator thereupon answered, first repeating his objection to the notice as not sufficiently specific in the description of the omitted property; stating also that the administrator had no means of knowing whether the sums charged as omitted were correct or not, and that, as administrator, it was his duty to deny, and he did deny each item so charged, and demanded that strict proof be made.

It was further stated in the answer, that for each of the years named "the deceased subscribed and swore to a tax list made out in due form of law and handed it to the proper assessor, wherein the deceased returned credits and money loaned" in the several amounts named; "That this valuation was approved by the assessor, who duly returned the same to the auditor of the county; that said valuations were duly submitted to the board of equalization, and duly approved by said board, and the auditor of the county duly placed the same upon the tax duplicate; that the deceased paid in full his State, county and school tax thereon."

The administrator further answered that section 259 of the general tax law, approved March 6, 1891 (p. 291), repealed all laws and parts of laws within the purview of that act, including section 1 of an act approved March 9, 1889 (p. 341), which was an act to amend section 147 of an act concerning taxation, approved March 29, 1881;

that there is, therefore, no law now in force for the taxation of omitted property, but section 142 (p. 257) of the tax law of 1891, which last section is prospective only, and does not authorize the assessment of property so omitted prior to 1891.

The statement filed by the auditor continues: "In this investigation, I was embarrassed by the refusal of those who had the custody of the books, notes, mortgages and papers of the deceased, to produce them in evidence; and, hence, I am compelled to decide from the best evidence before me. It clearly appears from the evidence, that the notes and mortgages which are of record in this and surrounding counties are of the value shown by the records."

"Many witnesses testified before me, relating to said alleged omitted property, and many records and documents were read in evidence.

"The hearing was continued from day to day until the 10th day of April, 1891, when all the evidence having been given by agreement of all parties, I took the case under advisement.

"I now find that during all the years, 1881, 1882, 1883, 1884, 1885, 1886, 1887, 1888 and 1889, the said Abner H. Bowen was a resident of the city of Delphi, in Carroll county, Indiana; that he departed this life on the 10th day of February, 1890, and, at the time of the commencement of this proceeding, and until the 3d day of July, 1891, the said William R. Stewart was the administrator of Bowen's estate; it being suggested that Natheniel W. Bowen succeeded Stewart as such administrator on the 3d day of July, 1891.

"I further find that for the said years the said Bowen's personal property was not all listed for taxation, but, on the contrary, that property belonging to him was omitted from the assessment books and from the proper tax

duplicates for the several years which is and was of the following value:

"For the year 1881, moneys, money loaned
   and credits ........................$104,600 00
"For the year 1882, moneys, money loaned
   and credits ...................... 134,000 00
"For the year 1883, moneys, money loaned
   and credits ...................... 146,000 00
"For the year 1884, moneys, money loaned
   and credits ...................... 162,500 00
"For the year 1885, moneys, money loaned
   and credits ...................... 172,000 00
"For the year 1886, moneys, money loaned
   and credits ...................... 175,000 00
"For the year 1887, moneys, money loaned
   and credits ...................... 218,840 00
"For the year 1888, moneys, money loaned
   and credits ...................... 219,000 00
"For the year 1889, moneys, money loaned
   and credits ...................... 252,000 00

"I find that the above omitted property was owned by said Bowen on the 1st day of April of the years above named; and I now assess the same as omitted property which has unjustly escaped taxation, and I now correct the proper tax duplicates of said county accordingly, and add said omitted property thereto."

It was averred in the complaint that the tax duplicates, as so altered by the addition of such omitted property, had been placed in the hands of the county treasurer for collection; that the taxes alleged to be due thereon amount to about thirty thousand dollars, and that the treasurer is insisting on their payment.

The question has therefore been raised as to whether this is a suit for the cancellation of the alleged illegal

taxes, or a suit to enjoin their collection. While the form of the pleadings shows an action for cancellation, yet the nature of the action and the result aimed at do not differ from those of a perpetual injunction; and we agree with counsel for appellee, that the question so raised is not important. Either form of action invokes the equitable jurisdiction of the court, and when all the necessary parties are before the court, such equitable relief may be granted as is consistent with the facts proved. *Keifer* v. *Summers*, 137 Ind. 106.

The objections to the auditor's assessment, urged in appellee's brief, are the same as those made in the complaint, and the same as those made originally in the answer to the auditor's notice to show cause why the omitted property should not be added to the duplicate. These objections we shall notice in order.

Appellee claims that ''there was not, in the statement filed with the auditor, or the notice issued by the auditor to the appellee, or in the finding, any such identification and description of the alleged omitted property, as would authorize the auditor to assess it as omitted property.'' The law authorizing the proceedings by the auditor has been on the statute book since the enactment of the tax law of 1881, where it stands as section 147. It is section 6416, R. S. 1881, section 2129 of Elliott's Supplement, and section 142, *supra*, of the tax law of 1891; and, so far as necessary to set out, is as follows:

''Whenever the county auditor shall discover or receive credible information, or if he shall have reason to believe that any real or personal property has, from any cause, been omitted in whole or in part in the assessment of any year or number of years, from the assessment book, or from the tax duplicate, he shall proceed, to correct the tax duplicate, and add such property thereto, with the proper valuation, and charge such

property and the owner thereof with the proper amount of taxes thereon, to enable him to do which, he is invested with all the powers of assessor under this act.

"But before making such correction or addition, if the person claiming to own such property, or occupying it, or in possession thereof, resides in the county and is not present, he shall give such person notice, in writing, of his intention to add such property to the tax duplicate, describing it in general terms, and requiring such person to appear before him at his office at a specified time, within five days after giving such notice, and to show cause, if any, why such property should not be added to the tax duplicate; and if the party so notified does not appear, or if he appears and fails to show any good and sufficient cause why such assessment shall not be made, the same shall be made, and the county auditor shall, in all cases, file in his office a statement of the facts or evidence on which he made such correction."

As to the statement made to the auditor, and of which complaint is made, it would seem that it is sufficient, under the statute, if the auditor receive any information, written or oral, or even "if he shall have reason to believe" that any property has been omitted from taxation. The statement, whether written or not, is sufficient if it inform the auditor that property has been omitted which should have been assessed.

Appellee considers that the written notice to the property owner should set out the omitted property by specific description. But the statute requires only that the auditor "shall give such person notice, in writing, of his intention to add such property to the tax duplicate, describing it in general terms."

"Taxes," as said in *Barker* v. *Morton*, 19 Ind. 146, "are not assessed against specific articles of personal property by description, but on the aggregate number,

quantity and value.   Take money, take a stock of goods, or manufactured articles, the taxpayer is assessed for what he owned on the first day of January [now April]."

From the very nature of the case, it may well be that the auditor can give only a general description.   The property-owner himself is the one who can give a particular description of his own property.   This the tax law requires him to do in the first place, when he makes out his particular list and hands it to the assessor.   It will be noticed, in the section which we are considering, that for the purpose of making the assessment of omitted property the auditor "is invested with all the powers of assessor under this act."

This gives to the auditor very large powers.   Section 51 of the tax law of 1891 (p. 213) requires the assessor, in case any person shall neglect or refuse to make out a proper statement of his property, "or if the assessor shall be in doubt whether such statement is correct," "to examine on oath any other person whom he believes to have knowledge of the amount, or value of any property owned or held by such person so neglecting or refusing; and such assessor is authorized to set down and assess to such person such amount of personal property as he may deem just."   The act of 1881 had similar provisions.   Section 6340, R. S. 1881.   The power to assess is a summary power; and, to secure uniform and just taxation, and protect the revenues of the State, both as to unscrupulous and dishonest evasion of the law, and also in the interests of honest taxpayers, it is necessary that assessment statutes should be liberally interpreted in aid of the taxing power.

Where title is sought through a tax sale, the statute is strictly construed in favor of the owner, but not where

the owner is attempting to avoid the payment of his just taxes. *Ricketts* v. *Spraker*, 77 Ind. 371.

It was never intended that proceedings before the auditor, such as those objected to in this case, should be conducted with all the precision and formality of an action in court.

There is another fatal defect in the objections made by the administrator to the notice and other proceedings of the auditor in assessing the omitted property. Appellee comes into a court of equity and asks that equity be done him. He should, therefore, first show that he has himself done equity. His objections, made before the auditor and repeated on this appeal, are: 1, that the notice was not sufficiently specific; 2, that for each of the years named the decedent had subscribed and sworn to a tax list, made out in due form of law, and handed it to the assessor, wherein the decedent returned certain credits and money loaned; that the valuation made by the decedent was approved by the assessor, duly returned to the auditor, submitted to the county board, again approved and so placed upon the duplicate; 3, that the administrator is not the proper party to notify in case of omitted property; and 4, that the act of 1891 repealed the law authorizing such action by the auditor. In short, the defense is that the decedent made his own assessment, swore to it, the assessing officers accepted the assessment so made, and now there is no help for it. The appellee makes no pretense that the assessment was fair or just, or that the decedent had, in fact, given in all his property for taxation. He says, in effect, to the State, "The thing is done, and what are you going to do about it?"

In taking this position, appellee seems to rely upon *Florer, Treas.*, v. *Sherwood, Admr.*, 128 Ind. 495, and *Woll, Treas.*, v. *Thomas, Admr.*, 1 Ind. App. 232. We

do not understand that these cases go any further than to hold that under the tax law of 1881 the county auditor, acting under his general authority to assess omitted property, has no right to increase the valuation of property returned by the assessor.

It may be admitted that if a dishonest property-owner make return to the assessor of a given note, or other obligation, at less than its true value, and by the mistake or connivance of the assessor such assessment is approved, and by like culpability of the county board it is finally placed upon the tax duplicate, and there is no appeal to the State Board, the State will have no redress except to prosecute the guilty parties criminally, and that the taxpayer in such case will escape the payment of his just taxes. But this has no bearing on a case where a property-owner fails to give in certain of his notes or other obligations, and is assessed only on the remainder. If he holds two notes, one for five hundred dollars and one for four hundred, each worth its face, and gives in for taxation, "notes, five hundred dollars," there is a plain omission of four hundred dollars which the auditor should assess if he learns of the omission.

As for current money, that, being itself the measure of value, is always worth its face, so that what is not given in is omitted. If one has nine hundred dollars in money, on hand or on call, and he gives in for taxation seven hundred, there is a clear omission of two hundred. This consideration of itself would be sufficient to show that the complaint in this case is bad, for it is not claimed by appellee that his decedent listed any money, but only "credits and money loaned" for the several years named; whereas, the law requires that "moneys" should be listed, and the auditor finds that not only "money loaned and credits," but also "moneys" were omitted from taxation during all these years. Both the tax law of 1881

and the present law make the distinction between money or "money on hand or subject to my order," and "money loaned." But, in any view, the holding in *Florer, Treas.*, v. *Sherwood, Admr., supra*, and *Woll, Treas.*, v. *Thomas, Admr., supra,* can hardly avail to justify a property-owner who comes into a court of equity, admitting, substantially, that he has not made an honest return of his property for taxation, and not denying that the assessment, as corrected by the auditor, is a just one. Might not the State, in such a case, meet the taxpayer on his own ground and reply: "The assessment is now corrected and placed upon the duplicate. Have you any reason to show why it is not a just assessment?"

*Musselman* v. *City of Logansport,* 29 Ind. 533, was an action to enjoin the collection of taxes on personal property on the ground that the sworn statement of the plaintiff was received by the assessor without question. The complaint was held bad. The court said that there was no averment that the personal estate of the plaintiff liable for taxation was less in value than the corrected assessment, none that his own sworn list was correct, nothing from which the conclusion could be drawn that the increased assessment was not entirely proper and correct; that it was only claimed that the plaintiff was not notified of the increase, and that there was no proof before the council; in a word, that the plaintiff sought the extraordinary process of injunction from a court of equity to protect him from paying a tax which, according to his own showing, it does not appear but that he ought, in justice and conscience, to pay. There was no equity whatever as the basis of his application. *City of Delphi* v. *Bowen,* 61 Ind. 29; *Ricketts* v. *Spraker, supra.*

In *Jones, Aud.*, v. *Summer,* 27 Ind. 510, it was sought to evade the payment of taxes because the assessments had been corrected by the auditor "without right and

contrary to law;'' but because it was not shown that the assessments, as corrected, were not in fact made upon the true valuation of the property, the injunction asked was refused. This court said further, speaking by Judge FRAZER, that it would be difficult to imagine a case more utterly barren of equity. The property owner ''committed serious errors in his lists, which in conscience, and as a good citizen, he ought voluntarily to have corrected, but did not. They were corrected, and now he asks to be secured in an advantage as the fruit of his own blunder, merely because the correction, though just, was directed by the wrong authority and without notice to him.'' The able and upright judge who decided that case continues: ''The decisions of this court heretofore, in restraining the collection of taxes, have gone to the utmost extent of authority. If we should now take the step required in this case to sustain the ruling below, we would be without the support of either reason or precedent, and the collection of public taxes would, upon the warrant thus given, be constantly arrested at the instance of those who seek to escape their just share of the public burdens.'' *Schmidt* v. *Wright,* 88 Ind. 56; *Cauldwell* v. *Curry, Treas.,* 93 Ind. 363.

In the case of *Sturges* v. *Carter,* 114 U. S. 511, appealed from the State of Ohio, the contention was ''That a taxpayer who has been evading the payment of the taxes due from him by making false returns, can shield himself behind the annual settlement made by the auditor with the treasurer, in which his returns were assumed to be true, and that the Legislature can pass no act by which the falsity of the returns can for a limited period be exposed, and the payment of the taxes enforced—in other words, that the taxpayer has a vested right in the fruits of his false returns.'' Such a propo-

sition can not be sustained. *Foster* v. *President, etc., Essex Bank,* 16 Mass. 245.

"In our opinion," continues the court, "no right of the taxpayer was invaded by the act of 1878. His investments in bonds and stocks were subject to taxation; the taxes upon such investments were due to the State, and the act of 1878 merely provided a method by which the taxes might be assessed and collected in spite of the annual settlements made by the auditor. It gave a new remedy to the State for enforcing a right which it had all the time possessed, namely, the right to the taxes upon property liable to taxation."

But the auditor, in this case, denies that his action was a mere re-valuation of the property already assessed. He says expressly, "That for the said years the said Bowen's personal property was not all listed for taxation, but, on the contrary, that property belonging to him was omitted from the assessment books, and from the proper tax duplicates, for the several years.   *   *   *   And I now assess the same as omitted property which has unjustly escaped taxation, and I now correct the proper tax duplicates of said county accordingly, and add said omitted property thereto."

We think, therefore, that the objections made by the administrator to the sufficiency of the information received by the auditor, concerning omitted property, and as to the sufficiency of the notice issued by the auditor to the appellee to show cause why this omitted property should not be placed upon the tax duplicate, were not well taken.

It is next urged that the law does not authorize notice to the administrator as to omissions of property from assessment made by a decedent.

The property alleged to have been omitted in this case is personal property. On the death of the owner, the

law puts this class of property in the hands of an executor or administrator, who is made the personal representative of the decedent. The administrator gives bond for all the personal property of the decedent; it is all regarded as in his possession and under his control.

The statute provides for notice to "the person claiming to own such property, or occupying it, or in possession thereof," "if he resides in the county and is not present." Notice to any one but the administrator would have been insufficient. But the administrator was present, he appeared and answered; no other notice was necessary.

It is claimed that the proceedings were ineffectual because the auditor did not "file in his office a statement of the facts or evidence on which he made such correction." We think such a statement is shown in the complaint, in which the whole proceedings before the auditor, as filed in his office, are set out. Irregularities do not affect the correctness of a tax assessment, provided the proceedings are substantially correct and the assessment is fair and just. *Musselman* v. *City of Logansport, supra.*

It is finally contended that "The tax law of 1891 repealed all former laws upon the subject of taxation, and took away all rights existing under former laws except such as are expressly saved." And that "As the right of the auditor to assess omitted property for any year or years prior to its passage is not saved by the act of 1891, such right does not exist."

This, again, is claiming equity without doing equity. If these taxes were unpaid, they belong to the State. They are the State's property, and the right of the State to them never ceased. Appellee's claim, then, in this contention, amounts to saying: "These taxes may belong to the State, but she has deprived herself of the means

of collecting them." But, as a matter of fact, the statute of 1891 has not repealed the law authorizing the assessment of omitted property by the auditor. The Legislature, in enacting the tax law of 1891, had no intention of giving delinquent taxpayers any such advantage over the honest people of the State. If there is any class of property more than another, which that law sought to have returned and appraised at its true value, it is such property as is concerned in this suit, and which had for so long a time escaped taxation in the hands of unscrupulous money lenders, to wit: money, notes, bonds and other credits, and choses in action.

The full title of the tax law of 1891 is: "An act concerning taxation, repealing all laws in conflict therewith and declaring an emergency." The law authorizing the assessment of omitted property by the auditor is not in conflict with the tax law of 1891, for it is itself a part of that tax law, being, as we have seen, a re-enactment, word for word, of the former statute on the same subject. It stands as section 142 of the present law, and section 147 of the tax law of 1881. It has been in force, without interruption, since March 29th, 1881. Appellee says, however, that in the body of the present act there is a repeal of all laws in the purview of the act; that is, of all other laws on the subject of taxation. But by article 4, section 19, of the constitution, "If any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

No laws in the purview of the tax law, therefore, except those that are in conflict with that law, have been repealed. If the repealing section of the tax law should be found to have the meaning given to it by appellee, then so much of that section as embraced any subject not expressed in the title of the act would be void. It is

only laws in the purview of the tax law, which are in conflict with it that are repealed.

In the case of *Barber Asphalt Paving Co.* v. *Edgerton,* 125 Ind. 455, this court, citing numerous authorities, said: ''Underlying all the rules for the construction of statutes is the cardinal and general one, that in construing a statute the court will seek to discover and carry out the intention of the Legislature in its enactment. In the search for that intention the court will look to each and every part of the statute; to the circumstances under which it was enacted; to the old law upon the subject, if any; to other statutes upon the same subject, or relative subjects, whether in force or repealed; to contemporaneous legislative history, and to the evils and mischiefs to be remedied.''

Guided by that broad rule, we could have little difficulty in concluding that the Legislature, in enacting a law which might, in some measure, relieve the people of the State from the evils of unequal taxation, would never think of repealing a law which provided for assessing property which had been for years dishonestly kept off the tax duplicate, particularly when we find the same law, word for word, re-enacted in the new statute. But even if there were an express repeal of the law in question, and at the same time, in the same statute which repealed it, a re-enactment of the law repealed, the re-enactment would so far neutralize the repeal as to keep the old law in force without interruption. Sutherland Stat. Con., sections 133, 134, 156. The decisions of the courts are in harmony with the rule as stated by that author. *Middleton* v. *New Jersey, etc., R. R. Co.,* 26 N. J. Eq. 269; *Skyrme* v. *Occidental, etc., Co.,* 8 Nev. 219; *Capron* v. *Strout,* 11 Nev. 304.

Even where the repealing statute only substantially

reënacts the law repealed, it is held that inchoate statutory rights accrued under the old law are not defeated. *Moore* v. *Kenockee Tp.*, 75 Mich. 332.

In *Scheftels* v. *Tabert*, 46 Wis. 439, the rule is very emphatically stated: "When the revised and consolidated act reënacts in the same words the * act or acts so revised and consolidated, such revision and consolidation shall be taken to be a continuation of the former acts, although such former acts may be expressly repealed by such revised and consolidated act." Citing numerous cases in the same court.

In *State* v. *Wish*, 15 Neb. 448, there is a like expression of the rule: "Where the reënactment is in the words of the old statute, and was evidently intended to continue in force the uninterrupted operation of such statute, that the new act or amendment is a mere continuation of the former act, and is not in a proper sense a repeal."

The rule, as so stated, is quoted as authority by Judge Elliott in the case of *Sage* v. *State*, 127 Ind. 15. See, also, *Wright* v. *Oakley*, 5 Met. (46 Mass.) 400; *Steamship Co.* v. *Joliffe*, 69 U. S. 450; *Mitchell* v. *Halsey*, 15 Wend. 241; *Douglas* v. *Douglas*, 5 Hun, 140; *Stafford* v. *His Creditors*, 11 La. Ann. 470; *Kesler* v. *Smith*, 66 N. C. 154; *United Hebrew Asso.* v. *Benshimol*, 130 Mass. 325; *Powers* v. *Shepard*, 48 N. Y. 540; *Cheezem* v. *State*, 2 Ind. 149; *Alexander* v. *State*, 9 Ind. 337; *Martindale* v. *Martindale*, 10 Ind. 566; *Cordell* v. *State*, 22 Ind. 1; *State* v. *Miller*, 58 Ind. 399; *Gorley* v. *Sewell*, 77 Ind. 316; *Sage* v. *State*, *supra;* and *City of Junction City* v. *Webb*, 44 Kan. 71, where many of the foregoing authorities, including Indiana cases, are cited.

There remains, therefore, no ground on which the complaint in this case can stand.

In *Musselman* v. *City of Logansport*, *supra*, it was said that the subject of taxation is one within the jurisdiction

of the law-making power, and that it is not the province of the courts to interpose obstacles to the execution of the legislative will, when clearly expressed.

It may be added that when we find honest officials, respecters of their oaths, as the auditor and ex-auditor, appellants in this case, it is the duty of the courts to uphold their efforts with the strong support of the law, as enacted by the Legislature of the State.

The judgment is reversed, with instructions to sustain the demurrer to each paragraph of the complaint, and for further proceedings not inconsistent with this opinion.

Filed March 6, 1894.

### On Petition for a Rehearing.

Howard, J.—The appellee contends that the decision in this case is in conflict with the decision of the court in the case of *Florer, Treas.,* v. *Sheridan, Admx.,* 137 Ind. 28.

That decision intended to go no further than the decision of *Florer, Treas.,* v. *Sherwood, Admr.,* 128 Ind. 495, on which it was in part based. Of that and other like cases it was said, in the principal opinion: "We do not understand that these cases go any further than to hold that under the tax law of 1881 the county auditor, acting under his general authority to assess omitted property, has no right to increase the valuation of property returned by the assessor."

In *Florer, Treas.,* v. *Sherwood, Admr., supra,* the description of the omitted property was held insufficient upon which to base an assessment, because it was expressly admitted "that a part of the property belonging to the party has been listed and assessed, and that the property which was listed and assessed, as well as that which it is claimed was not listed and assessed, all belonged to precisely the

same classes and is all described in the answer by the same words.'' In other words, the auditor was attempting a revaluation of property already assessed, instead of an assessment of omitted property.

In this case there is no such confusion of description; but the auditor says that the property which he proposes to assess as omitted property ''has wholly escaped taxation.''

The description includes ''moneys on hand or on deposit,'' and the case of *Florer* v. *Sherwood, Admr., supra,* distinctly says that, ''so far as money alone is concerned, a dollar should, of course, be valued as a dollar, and is sufficiently described and valued when the amount is stated.'' This statement is directly in support of the principal opinion in this case.

The auditor's attention, in this case, was directed to the case of *Woll, Treas.,* v. *Thomas, Admr.,* 1 Ind. App. 232, according to which he was told he ''ought to regard this omitted property as simply an undervaluation of the property, which was duly listed for taxation.'' Very correctly he answered, ''While I am no lawyer, I do not so understand that case.'' The court in that case said: ''Our conclusion is, that the auditor had no right, under the law in force at that time, to assess any property as omitted, except distinct, definite, and recognizable articles which had not been listed and properly appraised for taxation by the assessor.''

The auditor in this case, after a long and painstaking investigation, found ''distinct, definite, and recognizable articles'' of omitted property, ''which had not been listed and properly appraised for taxation by the assessor,'' being ''moneys, money loaned and credits,'' amounting in all to over a million and a half of dollars; and that ''it clearly appears from the evidence that the notes and

mortgages which are of record in this and the surrounding counties are of the value shown by the records.''

It is somewhat difficult to apprehend the position of appellee on this point.   Counsel say:   ''We have never contended· that there should be a specific description of the omitted property in the notice; but, on the contrary, have contended, and still contend, that there must be a general description sufficient to advise the owner of the claim of the auditor.''   ·   ·

This is what the auditor has done in this case.   This is what the statute, section 142, p. 257, of the tax law, requires:   ''Whenever the county auditor shall * * * have reason to believe that any real or personal property has, from any cause, been omitted in whole or in part * * * he shall proceed to correct the tax duplicate, and add such property thereto, * * * to enable him to do which, he is invested with all the powers of assessor under this act.   * * *   Before making such correction or addition, * * *he shall give such person notice, in writing, of his intention to add such property to the tax duplicate, describing it in general terms.''

Yet, while admitting that the statute requires only a general description of the property, counsel substantially, in page after page of their able brief, contend that the description is faulty because not sufficiently definite.

Counsel say that the auditor, ''exercising, as he does, a bare, naked, extraordinary, statutory authority, must proceed in strict conformity to the law, or his attempted assessments are absolutely void.''

The law itself does not prescribe this rigid rule; but, on the contrary, recognizes the summary character of assessment and taxation, and is satisfied with a substantial compliance, in good faith, with the requirements of the statute. ·

Section 224 (Acts 1891, p. 282), of the tax law, pro-

vides that ''no general or specific tax authorized by the laws of this State, and which shall be assessed on any property in any township, city or town within this State by any officer authorized to make assessments or which if made by another person or may be adopted by such officer as his act shall be held to be illegal or invalid for want of any matter of form in any proceeding not affecting the merits of the case, and which shall not prejudice the rights of the party assessed.''

There is no claim in this case that the property omitted was ever assessed, none that right and justice do not require that it should be assessed the same as any other property in the State. The argument is not as to the merits of the case, but only that certain technicalities were not fully observed in placing the property upon the duplicate. The property being upon the duplicate, the presumption is that it is correctly there. No taxes are void for mere irregularities in assessment, if there should be any, provided there is a substantial compliance with the statute.

Other questions discussed by counsel were, as we think, sufficiently considered in the principal opinion.

We have found, in the able and earnest argument of counsel, no reason to change the conclusion there reached.

To repeat the words of FRAZER, J., in *Jones, Aud.,* v. *Summer,* 27 Ind. 510, ''The decisions of this court heretofore, in restraining the collection of taxes, have gone to the utmost extent of authority. If we should now take the step required in this case to sustain the ruling below, * * * the collection of public taxes would, upon the warrant thus given, be constantly arrested at the instance of those who seek to escape their just share of the public burdens.''

The petition is overruled.

Filed June 22, 1894.