Filed Nov. 13, 1894.

---

◆

---

No. 17,022.

THOMAS v. TOWN OF BUTLER ET AL.

STATUTE.—*Revision and Substitution.*—*Repeal by Implication.*—Where a new act covers the whole subject-matter of an old one, and it is evident that the Legislature intended to revise the old act, and substitute therefor the new, the prior act is thereby repealed without any express words to that effect.

SAME.—*Agricultural Lands Within Town or City.*— *Taxation of.*—*Repeal of Statute.*—The act of April 16, 1881 (Acts 1881, p. 698), relating to the taxation of agricultural lands lying within the limits of a city or incorporated town, being a revision of, and intended as, a substitute for the act of March 21, 1879 (Acts 1879, p. 94), upon the

same subject, operated to repeal the last mentioned act, and the express repeal of the act of 1881 by the act of March 9, 1891 (Acts 1891, p. 398), extinguished both of the prior acts, and such lands thereafter were subject to taxation by a town or city as other property.

From the De Kalb Circuit Court.

*W. L. Penfield,* for appellant.

*J. E. Rose, C. J. Coats* and *J. H. Rose,* for appellees.

McCABE, J.—The appellant has 138 acres of land within the corporate limits of the appellee, which is not platted as town property and which is a farm used exclusively for agricultural purposes and not dedicated for corporate purposes.

The complaint sought to enjoin the collection of a portion of the tax levied thereon by the corporation for the year 1891. In addition to the facts above stated, it was alleged that the aggregate percentage of levy in Wilmington township, wherein said lands and town are situate for township, special school, road, and special road purposes was 25 cents on the $100 of the assessed valuation of property for taxation. And that the aggregate levy in said town for said year, for municipal, road, school, and water works tax was 97 cents on the $100 of assessed valuation of property; that the tax levied on her said lands by said town for said year was 97 cents on the $100; that the town is threatening to collect all of said tax; that appellant had tendered to said town $46, which is equal to the aggregate percentage levied for township, special school, local tuition, and road purposes in the civil township of Wilmington on the assessed valuation of her land had it been outside of said corporation; that said town had refused said tender and was threatening to collect the whole of said tax so levied by it on her said lands. She brought the money into court and deposited it with the clerk to keep her tender

good, and she prayed a perpetual injunction against the forced collection of the balance of said tax.

The circuit court sustained a demurrer to the complaint for want of sufficient facts, which ruling is assigned as the only error.

The question thus presented depends upon whether the act approved March 21, 1879, still remains in force. Acts 1879, p. 94. Appellant contends that it does, while appellee contends that it has been superseded and repealed.

The first section provides: "That lands lying within the limits of any city or incorporated town in this State, that are not platted as city or town property, and are not used for other than agricultural purposes, or are wholly unimproved, and that have not in any way been dedicated for corporation purposes, together with all articles or chattel property used for the purpose of farming on such lands, shall not be taxed for general city or town purposes at any higher aggregate percentage on the appraised value of the same than the aggregate percentage levied for township, special school, local tuition and road purposes in the civil township wherein such property is situated: *Provided, however*, That the provisions of this act shall not apply to parcels of land containing less than five acres."

The second section repeals all laws "in conflict with the provisions of this act," and the third and last section declares an emergency for the immediate taking effect of the act.

The Legislature passed an act, which was approved April 16, 1881 (Act of 1881, p. 698), the first section of which is section 3261, R. S. 1881. This act is a literal copy of that of 1879, above mentioned, except that the words, "and that have not in any way been dedicated for corporation purposes," have been left out of the last

act; and instead of the words, "all articles or chattel property used for the purpose of farming on such lands, shall not be taxed for city or town purposes at any higher aggregate, etc.," are substituted by the words, "all personal property used for the purpose of farming on such lands shall not be taxed in such city or town, for all purposes, at a higher aggregate, etc."

The act of 1881 was expressly repealed by the Legislature in an act passed for that sole purpose, approved March 9, 1891, Acts of 1891, p. 398.

The question thus arises, did the act of 1881 repeal the act of 1879? The appellant contends that it did not, but simply continued it in force, and that she is entitled to the exemption therein provided for, while the appellant contends that the act of 1879 was repealed by the act of 1881, and that the latter act was repealed by the act of 1891, above referred to, thus leaving no statute in force exempting appellant's lands from the percentage of levy of taxes, to which other property is subject within the corporate limits.

Appellant, in support of her contention that the act of 1879 is not repealed, cites *Cordell* v. *State*, 22 Ind. 1; *Alexander* v. *State*, 9 Ind. 337, and *Martindale* v. *Martindale*, 10 Ind. 566, to the effect that the reënactment of an existing provision of law does not necessarily repeal such former provision; and many authorities are cited by her to the effect that repeals by implication are not favored. *City of Evansville* v. *Summers*, 108 Ind. 189; *Coghill* v. *State*, 37 Ind. 111; *Jeffersonville, etc., R. R. Co.* v. *Dunlap*, 112 Ind. 93.

It may well be conceded that the law thus stated is well settled, but that leaves the question yet undetermined whether the act of 1881 repealed that of 1879.

It is also well settled that where a new statute covers the whole subject-matter of an old one, adds new pro-

visions, and makes changes, and where such new law, whether it be in the form of an amendment or otherwise, is evidently intended to be a revision, and to take the place of the old, it repeals the old law by implication. *Hadley* v. *Musselman*, 104 Ind. 459; *State, ex rel.*, v. *Board, etc.*, 104 Ind. 123; *Wagoner* v. *State*, 90 Ind. 504; *Longlois* v. *Longlois*, 48 Ind. 60; *President, etc., R. R. Co.* v. *Bradshaw*, 6 Ind. 146. But appellant insists that the new statute can not work a repeal of the old by implication, unless there is a conflict or repugnance between the provisions of the two acts that is irreconcilable; that is the well recognized rule where the repeal results alone from such repugnance or conflict. *Coghill* v. *State, supra; City of Evansville* v. *Summers, supra; Jeffersonville, etc., R. R. Co.* v. *Dunlap, supra.*

Where, however, the new act covers the whole subject-matter of an old one, and it is evidently intended thereby to revise the old act, and that the new act shall take the place of the old, then the old law is repealed because the circumstances evince an intention that the old law in the form it was is no longer to exist. *Dowdell* v. *State*, 58 Ind. 333; *State* v. *Mason*, 108 Ind. 48; *State, ex rel.*, v. *Board, etc., supra;* Sutherland Stat. Con., section 154.

The section of Sutherland above cited says: "Revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it the Legislature say the same thing, in effect, as when a particular section is amended by the words 'so as to read as follows.' The revision is a substitute; it displaces and repeals the former law as it stood relating to the subjects within its purview. Whatever of the old law is restated in the revision is continued in operation

as it may operate in the connection in which it is re-enacted. In *Bartlett* v. *King*, DEWEY, J., said: 'A subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on principles of law, as well as in reason and common sense, operate to repeal the former.' Though a subsequent statute be not repugnant in all its provisions to a former, yet if it was clearly intended to prescribe the only rule which should govern, it repeals the former statute. Without express words of repeal a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the subject embraced by both, and to prescribe the only rules in respect to that subject that are to govern.    *    *    *
Does a revision import that it shall displace the last previous form; that it is evidently intended as a substitute for it; that it is intended to prescribe the only rule to govern? In other words, will a revision repeal by implication previous statutes on the same subject, though there be no repugnance? The authorities seem to answer emphatically, yes. The reasonable inference from a revision is that the Legislature can not be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time, and that the new statute, being the most recent expression of the Legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law.''

There can be no doubt that the act of 1881 was designed, and intended as a revision of the act of 1879 in a corrected or improved form. This is evident from the fact that the body of the new act is an exact copy of the old in every respect except in the particulars already

mentioned, wherein the form has been attempted to be improved.

The improvement evidently intended was to leave out the qualification of the right to the exemption, excluding therefrom agricultural lands dedicated to corporation purposes; but principally the intended improvement consists in changing from the provision that the property mentioned "shall not be taxed for general, city or town purposes at any higher aggregate percentage on the appraised value of the same than the aggregate percentage levied for township, special school, local tuition, and road purposes in the civil township wherein such property is situated," so that the provision reads: "Shall not be taxed in such city or town for all purposes at a higher aggregate percentage upon the appraised value thereof than the aggregate percentage of the tax levy in the civil township wherein such property is situated."

The evident purpose of this provision was to prevent lands within the corporate limits of any town or city, used exclusively for agricultural purposes, from being taxed at a higher rate for all purposes, in the aggregate, than it would have been subject to had it remained outside of such corporate limits. Whether that was the intention of the first act is not made quite clear by its provisions.

A strict and literal reading of the act of 1879 would, perhaps, permit the city or town to levy for general, city, or town purposes an aggregate percentage on the appraised value of the same equal to the aggregate percentage levied for township, special school, local tuition, and road purposes in the civil township wherein such property is situated. And for at least some of these purposes such property would be liable to assessment in the corporation in addition to the aggregate percentage al-

ready mentioned, thus making it liable to a greater aggregate rate of taxation than other property within the corporation. Thus it is that the peculiar wording of the first act, if literally carried out, would defeat what must have been the original purpose of the Legislature. It must have been the purpose and intent of the revising act of 1881 to remove the possibility of such a result, and make it clear and plain that such property could not be taxed at a higher rate for all purposes in the aggregate than it would have been subject to had it never been brought within the corporate limits. The chief object of the new act was to accomplish that result. That clearly was a revision of the old act by stating it in a corrected or improved form, and was clearly intended to take the place of the old act. Nothing could be farther from a rational intent on the part of the Legislature than that both acts should stand as the law. It is true, as stated by some of the authorities above mentioned and cited by appellant, that so far as any operative part of the old act has been brought forward and reënacted by the new act, it is not repealed, and is, as stated by Sutherland, continued in operation, as it may operate in the connection in which it is reënacted. It has been frequently held in this and other courts, that the reënactment of a statute does not operate as a repeal of the former law, but that the effect of the new act is to continue the old act in force. *Gorley* v. *Sewell*, 77 Ind. 316, and cases there cited; *Reynolds, Aud.*, v. *Bowen, Admr.*, 138 Ind. 434, and numerous authorities there cited.

And that is the very contention of the appellant. But how does it continue the old act in force? It is continued in force in the new act, and not in the old. Otherwise there could be no revision of a law or laws without interminable confusion as to what the law is at any given time.

In the revision of laws it is often essential to bring forward into the new act many operative portions of the old statute without change or modification, and it is often of the utmost importance to public and private interests that the continuity of the operation of the reënacted statute shall not be broken by the reënactment thereof. To hold the operation of the reënacted statute broken by the reënactment is to hold, in many cases, that public interests and private rights are swept away beyond the possibility of repair. The principle upon which the continuity of operation of the reënacted statute rests is the manifest legislative intention.

It would be exceedingly unreasonable to suppose that the Legislature, in reënacting operative portions of a statute, intended thereby to break the continuity of its operation. When they bring forward into the new act such operative portions of the old act, they thereby indicate the legislative will and intent that such provision shall continue to be the law, not that it shall cease to operate, but that its operation as the law shall continue as before. But that does not indicate an intention to continue it in force in the old law, but to continue it in force in the new law as the only rule in the cases covered by the new act. The old law has been superseded and displaced, and as such has been repealed by the new act. Therefore, all of the act of 1879, left in force by the act of 1881, was merged in and formed a part of the latter act, and when it was expressly and unconditionally repealed, as we have seen, by the act of 1891 both acts were effectually repealed and extinguished.

There was, therefore, no law in force making a different rule for the assessment of appellant's farm lands within the corporate limits of the town of Butler than that applicable to other property within such limits at the time the assessment complained of was made. This

leads to the conclusion that the complaint did not state facts sufficient to constitute a cause of action, and that the circuit court did not err in sustaining the demurrer to the complaint.

The judgment is affirmed.

Filed Nov. 15, 1894.