## CITY OF INDIANAPOLIS *v.* RITZINGER.

[No. 2,801.   Filed February 2, 1900.]

MUNICIPAL CORPORATIONS.—*Vacation Proceedings.—Cities.*—Section 4420 Burns 1894 provides that the owner of an addition to a town which does not improve may have the addition vacated by applying to the board of county commissioners.   Section 4416 Burns 1894 prescribes all necessary steps to be taken before the board of commissioners in vacation proceedings.   By the act of 1867 (Acts 1867, p. 74), the common councils of cities were given the same power with reference to vacation proceedings in cities as that given by statute to county commissioners of vacation proceedings in towns.   *Held,* that a city council had the power to vacate an unimproved addition on the petition of the owner, and that the act of March 7, 1875 (Acts 1875, p. 17), providing for the appointment of city commissioners, did not amend or alter the law in relation to vacation proceedings.   *pp. 69-73.*

TAXATION.—*Unplatted Lands.—Municipal Corporations.*—By the provision of §3261 R. S. 1881 (repealed in 1891) tracts of land of not less than five acres lying within a city or town which were not platted and not used for other than agricultural purposes, were not subject to taxation at a greater rate than the tax levy in the civil township wherein such property was situated, and under said statute the owner of such real estate could recover from the city in which the land was situated taxes collected by such city in excess of the township rate.   *pp. 73, 74.*

MUNICIPAL CORPORATIONS.—*Taxation.—Refunding Taxes Erroneously Assessed.*—Section 3157 R. S. 1881 not only confers upon the common councils of cities the right, but makes it their duty, to refund taxes erroneously assessed and collected.   *pp. 74-77.*

From the Marion Superior Court.   *Affirmed.*

*J. W. Kern* and *J. E. Bell,* for appellant.

*F. H. Blackledge,* for appellee.

WILEY, C. J.—This was an action by appellee to recover taxes alleged to have been erroneously assessed.   The amended complaint alleged that on January 1, 1883, and continuously thereafter during the years 1883 to 1890, inclusive, appellee was the owner of certain lands within the corporate limits of the city of Indianapolis; that said tract

of land did not contain less than five acres; that, during the years 1884 to 1890, said land was not platted as city property, but was used only for agricultural purposes, and was wholly unimproved; that said land, during said years, was taxed by said city at fixed rates upon each $100 in value; that the valuation of the land for taxation during said years was as follows: For 1884 and 1885, in said city, $45,000; in said county of Marion, $27,950; and for the years 1886 to 1890, inclusive, the sum of $25,000 in said city and county. That the tax levied and assessed against said property was as follows: For 1884, $945; for 1885, $828; for 1886, $445; for 1887 and 1888, $452.50; for 1889 and 1890, $475; that the amount of tax assessed against and collected from appellee in excess of the sum justly, legally, and equitably due was as follows: For the year 1884, $457.47; for 1885, $498.19; for 1887, $95; for 1888, $82.50; for 1889, $87.50; for 1890, $92.50; that the last of said above amounts, being the difference between the amount payable each year at the rate levied in Center township, in said county, where said lands are situate, and the rate levied and paid in and to said city for all purposes, is the excess of the aggregate percentage of taxes levied for general township purposes by the township in which said city is situate; that said sums so assessed and collected by said city were illegally, unjustly, erroneously, and wrongfully levied, assessed, and collected. The complaint further avers that, in March, 1890, appellee filed with the clerk of said city, directed to the common council, her petition, praying that the taxes so wrongfully, etc., levied and collected, be refunded to her, which petition was refused. The case was put at issue by an answer in denial, and tried by the court, resulting in a finding and judgment for appellee. Appellant's motion for a new trial was overruled, and on appeal it has assigned errors as follows: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) that the court erred in overruling appellant's motion for a new trial. The

City of Indianapolis *v.* Ritzinger.

first assignment of error appellant has waived by its failure to discuss it. Appellant's motion for a new trial was based upon the following causes: (1) That the assessment of the amount of recovery was erroneous, being too large; (2) that the decision is contrary to law; (3) that the decision is not sustained by sufficient evidence. The facts upon which the case was determined were all agreed to in writing, and signed by the parties. The facts, thus agreed to, constituted all the evidence.

A statement of the facts is necessary to a determination of the questions discussed, and they are as follows: That the appellee was the owner of the real estate, described in her complaint, during the years of 1883 to 1890, inclusive; that said tract of land contained not less than five acres; that it was not used for other than agricultural purposes, and was wholly unimproved; that during all of said years said land was valued and appraised in the city of Indianapolis and Marion county for taxation; that the rate per $100 on the valuation was fixed and levied by the common council of said city; that the amount of taxes therein for all purposes was assessed and extended on the tax duplicates of the city and county, and that the taxes for said years were paid by appellee; that the valuation of said land for taxation in said city for all purposes for and during said years was the same as charged in the complaint. That the rate on each $100 in the city of Indianapolis for all purposes during said several years was as follows: For 1884, $2.10; for 1885, $1.84; for 1886, $1.87; for 1887 and 1888, $1.81; for 1889 and 1890, $1.90. That the amount of taxes paid on said land during said years by appellee was as follows: For 1884, $945; for 1885, $828; for 1886, $445; for 1887 and 1888, $452.50; for 1889 and 1890, $475. That the valuation for taxation of said lands in Marion county and Center township for and during said years is as follows: For 1884 and 1885, $27,950; for 1886 to 1890, inclusive, $25,000. That the aggregate percentage or rate of taxes levied on each

$100 of taxable property in said township during said years was as follows: For 1884, $1.34; for 1885, $1.18; for 1886, $1.35; for 1887, $1.43; for 1888, $1.48; for 1889, $1.55, and for 1890, $1.53. That the amount of taxes upon said land for said several years, estimated upon the valuation thereof in Marion county at the aggregate percentage levied in said township, is as follows: For 1884, $374.53; for 1885, $329.81; for 1886, $337.50; for 1887, $357.50; for 1888, $370.50; for 1889, $387.50; for 1890, $382.50. That the difference in amount between the taxes actually paid by appellee in said city for all purposes and the sums ascertained upon the basis of the county appraisement, at the rate fixed for Center township, is as follows: For 1884, $570.47; for 1885, $498.19; for 1887, $95; for 1888, $82.50; for 1889, $87.50; for 1890, $92; that for the year 1886, the appellant refunded to appellee $107.59 as overpayment; that all of said sums so paid by appellee were received by appellant and appropriated to its own use; that the petition filed by appellee in March, 1890, to have such overpayment of taxes refunded to her was refused by the common council.

It further appears that the tract of land described in the complaint was laid out and platted into lots, streets, and alleys in 1873, and was known as Arsenal Park addition to the city of Indianapolis; that said plat was duly recorded, and that in April, 1883, appellee and others filed their petition with the common council for the vacation of said addition. It is shown in the petition that none of the lots had ever been sold, and that none of the streets had ever been improved, and none of them had ever been used by the public except Ohio street. Without going into details of the proceedings of the common council, upon the petition, it is sufficient to say that the "prayer of the petition" was granted, and the vacation of the streets and alleys ordered. It also appears that during the years 1884 to 1890, the land appeared on the tax duplicate as a part of the southwest quarter of section six, township fifteen, range four, and

during part of the time it is referred to on the tax duplicate as "Arsenal Park addition vacated".

This action was commenced June 3, 1890. The agreement as to the facts was made and filed June 29, 1895, and final judgment was entered May 22, 1896. Counsel for appellant argue that the judgment is erroneous for four reasons: (1) Because the land described is still platted land, the platting thereof having never been legally vacated; (2) that if the land is unplatted, then the amount of recovery is erroneous, because the court gave judgment for the taxes of 1889 and 1890, both of which years were not due or payable when the petition for the return thereof was filed, and that when this action was commenced the last half of the taxes of 1889 had not been paid, and the whole of the taxes of 1890 was not due; (3) the evidence does not show either the township rate or the rate in the city for general purposes, and, on account of this uncertainty, it is impossible to say what amount appellee should recover; (4) the court included in its judgment the taxes levied and collected for library purposes for each year, which taxes were never received by the appellant.

The first proposition depends upon the authority of the city to vacate the plat or addition known as "Arsenal Park addition". If this authority existed, it was statutory, and hence we must look to the statute. In 1867, the legislature, in an act concerning the incorporation of cities, provided, that "The common council shall have the same power to vacate any lot, street, alley, common, public square, or part thereof, in any city, which the board of county commissioners now have in reference to towns, and all the proceedings necessary to effect any such vacation shall conform, as nearly as the same are applicable, to those now prescribed for such vacation in reference to towns." (Acts 1867, p. 74.) By an act approved March 5, 1877 (Acts 1877, p. 11, §6), and by a confirmatory act approved March 8, 1881 (Acts 1881, p. 15, §5), the powers of the common council and board of aldermen are defined as follows: "The powers and

duties of the common council, as defined in the acts of March 14, 1867, and subsequent acts, shall remain in force under this act, except, that the concurrent action of the board of aldermen shall be required in all cases." The powers "which the board of commissioners now have, in reference to towns", and which are conferred upon the common council by the act of 1867, *supra*, are defined by §4416 Burns 1894, the same having been in force since February 26, 1857. That section provides for the vacation of lots, streets, and alleys that have been platted and laid out, by petition to the board of commissioners. It is not necessary to set out in full the statute, but it is sufficient to say that it prescribes all necessary steps to be taken. In this connection, it is proper to refer to another statute passed in 1852, being §4420 Burns 1894. It is as follows: "If any person shall lay off an addition to any town which does not improve, and shall be the legal owner of the lots contained in such addition, such person, or any other person who shall become the legal owner thereof, may have such addition, or any part thereof, vacated, by applying to the board of commissioners of the proper county, after notice as hereinbefore provided, and proof of ownership of such lots." These several acts were in force when appellee filed her petition to vacate, and it affirmatively appears from the record that the city, through its common council, acted upon and under them, and that the prayer of appellee's petition to vacate was granted. We think that these acts gave the common council authority to order the vacation, as it did, and it is evident that the appellant city recognized such right, for thereafter, as is shown by the record, the real estate was carried forward and described on the tax duplicate by a part of a section, etc., and not by the numbers of the lots. Counsel for appellant have, in argument, called our attention to §§3184, 3185 R. S. 1881, relating to certain powers delegated to the common council to vacate streets, etc., upon petition, etc. By a reference to the original act of March 17, 1875 (Acts 1875,

City of Indianapolis *v.* Ritzinger.

p. 17, §§18, 19), we find the act provides for the appointment of a board of street commissioners, and defines certain duties required of them in reference to laying out, opening, and vacating streets, etc. Such original act did not amend or alter the law in relation to the powers of the common council of a city to vacate any part of a plat, or an addition to the city, that had been laid out in town lots, etc. For these reasons, we are of the opinion that the statutes cited are not applicable here. These sections of the statute do not confer any additional power upon the common council, nor take any from it; they simply create a subordinate board, define its duties, and empower the common council to vacate streets, etc. Under the act of 1867, *supra*, it is provided that all the "proceedings necessary to effect any such vacation shall conform, as nearly as the same are applicable, to those now prescribed for such vacation in reference to towns". By a reference to the record, which we need not detail, we find that such proceedings had before the common council did substantially conform to all the requirements of the statute relating to the vacation of platted lands by the boards of county commissioners. The record shows that appellee was required by the council to pay certain sums of money and to do certain things as conditions upon which her petition for vacation would be granted, and it is shown that "all sums required to be paid, and all things required to be done by Maria F. Ritzinger in connection with said proposed vacation, were paid and done within the time specified and required." It is apparent, therefore, that both appellee and appellant performed all necessary acts pertaining to the vacation of the platted land described in her petition, and both acted upon the belief that such vacation was fully accomplished. It is also apparent that each of the parties went upon the theory that the vacation had been made, for the order of the common council, among other things, required appellee to have a transcript of the proceedings before it, certified and recorded in the recorder's office of the

county, which was done; to pay certain costs, which she did; and the property was carried on the tax duplicate as "Arsenal Park addition vacated." The common council evidently construed the statute as clothing it with authority to order the vacation after appellee had done all that was required of her to do under the statute, for it granted the prayer of her petition, and did all that it was required to do to accomplish the vacation. The rule is well settled by repeated decisions, "that the construction given the statute by those charged with the duty of executing it is always entitled to respectful consideration and should not be overruled, without cogent reason." *United States* v. *Moore*, 95 U. S. 760; *Edwards* v. *Darby*, 12 Wheat. 210; *United States* v. *Bank*, 6 Pet. 29. And it has been held that such construction will prevail over any mere technical import of words. *Rogers* v. *Goodwin*, 2 Mass. 475.

Counsel for appellee has very ably discussed the doctrine of common law vacation, and there is much force and reason in what he says; but in view of the conclusion we have reached that there was a statutory vacation, binding alike to appellant and appellee, we need not consider appellee's right to a vacation under the common law. In view of the facts, as shown by the record, appellant is not now in a position to controvert the question of the vacation by its common council, for it has acquiesced in its acts. It is proper for courts to look at and consider the intention of parties in their transactions, and, where such intention is manifest, it will control. In this case, it is apparent that the intention of the parties—the city acting through and by its common council—was to vacate the addition prayed for in appellee's petition, and the acquiescence of the city and its ratification of its intention by its subsequent acts are sufficient to forever prevent and silence appellant from asserting that there was any other or different intention. What did appellant do to show what the intention of the parties was, and what was in fact done? Briefly enumerated, the fol-

City of Indianapolis *v.* Ritzinger.

lowing: (1) Required appellee to agree to certain things in regard to the improvement of Ohio street. (2) Required her to agree that under certain contingencies other streets might be opened through her property, thus vacated. (3) Required that an entry should be made upon the plat book showing the vacation. (4) Placed the vacated property upon the tax duplicate, showing that it was taxed as farm land, and not as city lots. (5) Refunded to appellee for the year 1886 the amount of taxes collected as city property. But we need not pursue this inquiry further.

Having reached the conclusion that appellee's platted property was legally and properly vacated, the next question for decision is the right of appellee to have refunded to her the amount of the taxes unlawfully assessed and paid. This right is not seriously questioned by appellant, except as to the last half of the tax of 1889, and all of 1890. When this action was commenced, and when appellee's right of action accrued, the following statute was in force: "Lands lying within the limits of any city or incorporated town in this State, that are not platted as city or town property, and are not used for other than agricultural purposes, or are wholly unimproved, together with all personal property used for the purpose of farming on such lands, shall not be taxed in such city or town, for all purposes, at a higher aggregate percentage upon the appraised value thereof than the aggregate percentage of the tax levy in the civil township wherein such property is situated: Provided, however, That the provisions of this act shall not apply to parcels of land containing less than five acres." §3261 R. S. 1881.

It is shown that appellee's real estate was in the corporate limits of the city of Indianapolis; that the tract of land contained not less than five acres; that it was unimproved; was not used for other than agricultural purposes, and that it was taxed in such city for all purposes at a higher aggregate percentage upon the appraised value thereof than the aggregate percentage of the tax levy in the civil township in

which it was situated. It is also specifically shown by the agreed facts what the difference was for each year, from 1884 to 1890, between the aggregate percentage upon the appraised value in the civil township and the percentage of taxation within the city. This difference constituted the basis of the finding and judgment in favor of appellee.

As to the right of a taxpayer to recover taxes illegally assessed, there seems to be no doubt in this State. Without discussing the question, we cite the following authorities: *Cleveland, etc., R. Co.* v. *Board., etc.,* 19 Ind. App. 58; *Fleming* v. *City of Indianapolis,* 6 Ind. App. 80; *DuBois* v. *Board, etc.,* 4 Ind. App. 138; *DuBois* v. *Board, etc.,* 10 Ind. App. 347; *Donch* v. *Board, etc.,* 4 Ind. App. 374; *Leonard* v. *City of Indianapolis,* 9 Ind. App. 262.

Appellant's second proposition is that if the lands are unplatted the amount of appellee's recovery is erroneous, because the judgment includes the taxes of 1889 and 1890, and that these taxes were not due or payable when appellee filed her petition to have them refunded, and that when this action was commenced, the last half of the tax of 1889, and all of 1890, had not been paid, and the tax of 1890 was not due. It is argued that the claim for the recovery of the taxes for the years 1889 and 1890 should have been embraced in a supplemental complaint, as the right of action for the taxes of those years had not accrued when this action was commenced. We have no doubt but what it would have been a proper practice to have embraced the taxes for the years 1889 and 1890 in a supplemental complaint, but under the facts, as they appear by the record, appellant's objection comes too late. The original complaint was filed June 13, 1890. On May 14, 1895, by leave of court, and without objection on the part of appellant, appellee filed her amended complaint, upon which issue was joined and trial had. In the amended complaint, appellee averred the payment of the excess in taxes for each year, including 1889 and 1890, and in the

agreed statement of facts appellant concedes such payments, before the amendment to the complaint was made, and joined issue by an answer in denial.   Aside from the question of practice, we are clearly of the opinion that by submitting the questions at issue to the court to be determined upon the facts agreed to, and in view of the facts that appellant conceded that the taxes of 1889 and 1890 had been paid, and that this was an issuable fact to be determined by the court, and appellant made no objection thereto, it cannot be now heard to complain.   It is clear that the amended complaint contains enough to render the judgment thereon a complete bar to another action for the same cause, and in such case it is held to be sufficient. *Bronnenburg* v. *Rinker*, 2 Ind. App. 391.

In the amended complaint it is averred that the amount of tax assessed against and collected from appellee in excess of the sum justly, legally, and equitably taxable and due was a certain amount for each year, specifying the same, including 1889 and 1890.   Appellant agreed that the sums so specified were assessed against and paid by appellee, as charged in the complaint.   It is too late for it now to say that the judgment is erroneous, being excessive, in that it includes the tax of 1889 and 1890.   That was one of the issues it submitted to the court without objection as to the manner or form of its submission.

Appellant's third proposition is that the evidence does not show either the township rate or the rate in the city for general purposes, and on account of this uncertainty it is impossible to say what amount appellee should recover.   We do not think there is any substantial merit in this position.   It is clearly shown by the agreed facts just what the rate of taxation was in the township and also the rate in the city, and what the difference was between the total rate in the township and the city, and it was this difference upon which the court based its judgment.   In *Thomas* v. *Town of Butler*, 139 Ind. 245, in referring to and construing the act of April

16, 1881 (Acts 1881, p. 698), and the act of March 21, 1879 (Acts 1879, p. 94), it was held that it was plain that such property (unimproved farm lands within the corporate limits of a city) could not be taxed at a higher rate for all purposes in the aggregate than it would have been subject to had it never been brought within the corporate limits. It appearing that appellee's lands were assessed at a higher rate for all purposes in the aggregate than other like lands in the township and without the corporate limits of the city, and it further appearing what the difference in the rates was, and that difference being the aggregate amount fixed by the judgment, it follows that the judgment is right under the evidence. It is also an admitted fact that the total amount of that difference, being the amount of the judgment rendered, was paid by appellee, received by appellant, and that it appropriated it to its own use.

Appellant's fourth proposition is that the judgment includes taxes levied and collected for library and school purposes for each year in the city, which taxes were never received by the city, and for this reason the judgment is excessive. Our answer to this is, that there is nothing in the record to show that such proposition is correct. We do not find anything either in the pleadings or in the evidence to support this theory of appellant, and hence we have no data from which we can determine the question.

There is but one other question discussed, and that is the right and duty of the city to refund taxes erroneously assessed and collected. Such duty rests upon the statute, and that statute is as follows: "The common council may, at any time, order the amount erroneously assessed against and collected from any taxpayer to be refunded to him." §3157 R. S. 1881. This statute not only confers upon the common council the right, but makes it their duty to refund such erroneously assessed and collected taxes. Nor was appellee's right to recover for the years 1889 and 1890 defeated by the repeal of §3261 R. S. 1881, exempting agricultural

City of Indianapolis *v.* Ritzinger.

lands within the corporate limits of a city from taxation, except as such other lands in the township are assessed. It is true, as argued by appellant, that section 3261, *supra*, was repealed by the act of March 9, 1891 (Acts 1891, p. 398). *Thomas* v. *Town of Butler*, 139 Ind. 245. But such repeal did not necessarily take from appellee any right of action she might have had which accrued when the statute was in force. This exact question has been before this court and decided adversely to appellant's contention. *Leonard* v. *City of Indianapolis*, 9 Ind. App. 262. In that case, Rhinehard, J., speaking for the court, said, "Conceding, without deciding, that by the legislation of 1891, both the right and the remedy provided for in such cases as the present one have been abrogated, it still remains true that both the right and the remedy of the appellant had then accrued, and could not be affected by such legislation without an express provision to that effect in the repealing act." Citing §243 R. S. 1881, which provides that "No rights vested, or suits instituted, under existing laws shall be affected by the repeal thereof, but all such rights may be asserted, and such suits prosecuted, as if such laws had not been repealed." By §248 R. S. 1881, it is provided that the repeal of a statute shall not work a release or extinguishment of any liability incurred under the same unless it be so declared in the repealing act. So we see that before the act of 1891, *supra*, was passed, both the right and the remedy of appellee had accrued, and that such act did not release or extinguish appellant's liability, because the same was not declared therein.

From the whole record, it appears to us that a correct conclusion was reached by the trial court, and appellant failing to convince us that there is any reversible error, the judgment is affirmed.