Kerlin v. Reynolds et al.

No. 17,070.

KERLIN v. REYNOLDS ET AL.

FEES AND SALARIES.—*Salary of Township Trustee, for Overseeing the Poor, Payable from County Treasury.*—The salary of a township trustee, acting as overseer of the poor, is payable from the county treasury, and is not a charge against the township fund, as the acts of 1879, p. 142, directing payment for such services out of the county treasury, was not repealed by the acts of March 6, 1889, March 7, 1891, and March 4, 1893, providing that each trustee shall receive a specified sum per day in full compensation for all services performed by him in any capacity.

STATUTE REPEALED.—*Dog Law.*—*Taxes.*—The act approved March 5, 1891, creating a method for the taxation of dogs to the exclusion of all other methods, was repealed by the act of March 6, 1891, sections 47 and 53 of which provided another and antagonistic method of taxation.

TOWNSHIP TRUSTEE.—*Office Expense, Fuel, Light, etc.*—*Liability For.* —The expenses of office rent, fuel and light, incurred by a township trustee, are not a charge upon the township fund, as the statutes grant no authority to incur such expenses.

SAME.—*Attorney's Fees.*—*Expenses for Blank and Records.*—*Liability For.*—*Township Embracing City.*—Expenses incurred by the trustee of a township embracing a city, for attorney's fees and for purchasing blanks and records, are not a charge upon the township fund, as there are no united purposes of the urban and suburban populations requiring such expenditures.

SAME.—*Services in Relation to Township Library Furnished by State.* —*Liability For.*—The services performed by a township trustee in connection with the library furnished by the State to the township is in his capacity as school trustee, under the statutes, which contemplate the establishment of a library system as a part of the educational or common-school system of the State, and are not a charge against the township.

From the Carroll Circuit Court.

*J. H. Gould, G. R. Eldridge, G. W. Julien* and *W. C. Smith,* for appellant.

*M. A. Ryan, E. B. Seller* and *W. E. Uhl,* for appellees.

HACKNEY, J.—The appellant, for himself and on behalf of the citizens and taxpayers of the city of Delphi, sued to enjoin the collection, as taxes for township purposes and to the use of Deer Creek township, the sum of seven cents on each one hundred dollars in value of the real and personal property within said city and owned by the appellant and such other taxpayers of said city.

Two questions are presented by the record and discussed by counsel; the first challenging the authority of the township, for township purposes, to levy a tax upon the property within the limits of and subject to taxation by an incorporated city, and the second denying the sufficiency of the record of the county commissioners to disclose a concurrence by the board in such levy. Our conclusion renders it unnecessary to consider the manner of making the levy since we have no doubt of the absence of any authority to make a levy for such purposes upon such property.

The question does not depend upon the constitutional authority of the Legislature to subject the property of the minor political subdivision to taxation for the purposes of the major division, for the reason that the Legislature has not, so far as we have been able to learn, attempted by any existing legislation to exercise any such authority.

The township trustee is an officer chosen by the people whom he serves, and these comprehend not alone the people of the township outside the incorporated cities and towns, but also the citizens within such cities and towns. Outside the cities, his duties relate to the schools and the roads.   Even these duties are so performed that when relating to the schools he acts as the school trustee, and when relating to the highways and to some other township affairs he is deemed to act for the civil township,

and is the civil township trustee, commonly known as the township trustee. In the performance of any such duties he does not serve the people of the cities, and owes them no obligation for the manner in which he performs such duties. With relation to the highways and the schools within the city, they are subject alone to official control of officers of such city, and are created, supported and maintained alone by the citizens of the city through a system of taxation provided by the Legislature for enforcement by and through the official agencies of the city. In these respects, and possibly in some others, the city corporation and that of the school or civil townships are entirely separate and distinct, though the city is within the geographical limits of the civil township.

There is no authority given to tax the people of a township, outside the city, for the support of interests within and relating alone to the city in its distinct corporate capacity, and it may, in like manner, be said that those interests which are peculiar to the citizens and the property outside such city must find support alone from those whose interests they are, namely, those of the township as distinguished from those of the city. In the absence of affirmative legislation commingling such interests, dividing such burdens and providing that a common officer shall protect and enforce them, we must hold that they are to be deemed separate and treated distinctly. This conclusion necessarily follows from the nature of our forms of local government. This conclusion does not, however, exclude the idea that there may be interests general and mutual as between the citizens and the property within the cities and within the civil township. In the support and care of the poor within the civil township, including those within the cities, there are such interests, and there could certainly

be no legal objection to a method of taxation bearing alike upon the citizens and property of the whole township, including such cities. For such purposes, and in view of such general and mutual interests, such citizens and such property would constitute a taxing district. Therefore, "the nature of the tax will determine the district," as said by Judge Cooley in his work on Taxation, p. 153.

The laws of this State have made the support of the poor a county system in the matter of levying and collecting the taxes for that purpose, and in the one respect of constituting the township trustee an overseer of the poor is such system a township system. The cities and towns, under our general laws, maintain no separate methods of caring for the poor, but for that purpose the trustee is the agent and officer for them in common with the citizens of the township outside of the cities. In this respect, at least, is the trustee the officer of the citizens of both the city and the township, outside of the city, and in this is found an answer to the argument that if not a representative of the city population, that population should and could have no voice in his election.

If we are correct in the conclusion that the urban and suburban population and property of a township may properly be the subjects of a common tax, and that such citizens are entitled to act in common in the election of an officer to perform a public duty in which both are interested alike, then it remains to inquire whether a tax for township purposes creates a fund in the expenditure of which there is any common or mutual interest or duty. The appellant earnestly maintains that there is no such interest, while the appellee's learned counsel insist that the trustee renders services which inure to the benefit of the inhabitants of the city; and that

townships may maintain public cemeteries and keep them in repair for use by all of the inhabitants of the township for the burial of their dead. No service is specially mentioned and none occurs to us, saving that rendered as overseer of the poor, and for that he is paid from the county treasury. R. S. 1881, section 6009. The act of February 29, 1893 (Acts 1893, p. 158), is the only permission to township trustees to maintain cemeteries, that has come to our notice. The levy in question was made in June, 1892, and could not have been made in view of or by the authority of that act. We are not inclined to the view that the act would permit the trustee to maintain a cemetery for the use of residents of the incorporated city, but this we need not here decide.

It is not claimed by the appellee that the levy can be justified for the purpose of compensating the trustee for services as an inspector of a township election, and since no such election has been held since April, 1890, and by the act of March 2, 1893 (Acts 1893, p. 192), such elections will hereafter be held as a part of the general elections, no such claim could reasonably be made.

Section 5995, R. S. 1881, directs a levy, for township purposes, upon the property of the township. In the same connection it is directed that such levy shall be made for road and other purposes. We have no doubt, in the absence of a common interest between the two municipal corporations, the city and the township, this statute should be construed to apply to the property of the township as distinguished from that within the limits of the independent municipality, the city. The appellees' learned counsel cite the case of *Tilford, Aud.*, v. *Douglass, Tr.*, 41 Ind. 580, as contrary to this view. That case involved the question of

the power to levy a tax, for township purposes, upon property within an incorporated town, and it was held that, as overseer of the poor, the trustee's salary was payable from the fund raised by such levy, and that he had to do with the streets, alleys and highways of the town, the taxes for which were levied by him. The power was there upheld upon the theory of mutual interests, urban and suburban, in the objects and purposes for which the levy was made. Whether such interests existed at the time, and as between town and township municipalities, is not a question with which we are now concerned, and it is sufficient to say that neither of such interests so held to be maintained in common are now maintained in common by the people of the city and of the township.

By the act of March 6, 1889 (Elliott Supp., sections 1977 and 1978), the act of March 7, 1891 (Acts 1891, p. 349), and the act of March 4, 1893 (Acts 1893, p. 298), the salaries of township trustees in townships containing populations of from 25,000 to 100,000 were specially provided, and by the first two of said acts the rate of compensation of all township trustees, other than those whose townships contained such special populations, was provided.

By none of these acts is the question before us affected. If injustice may be done by the special acts mentioned, in the townships where such special salaries are provided, that is not a reason for departing from what we believe to be the true rule in the case before us. The responsibility for that injustice, if any, must rest with the Legislature, and is not for consideration by this court.

We conclude, therefore, that the levy in question was without authority of law, so far as it included property

within the city of Delphi; and that the ruling of the circuit court was erroneous.

The judgment of the circuit court is reversed, with instructions to grant the appellant's motion for a new trial.

Filed March 9, 1894.

## ON PETITION FOR REHEARING.

HACKNEY, J.—The appellee has presented an extended, earnest and able petition for a rehearing. With one or two exceptions the questions argued are those passed upon in the original opinion. It is insisted that we are in error in holding that the services of a trustee as overseer of the poor are compensated from the county treasury and not from the township fund. It is claimed that the acts of March, 6, 1889, March 7, 1891, and March 4, 1893, *supra*, repeal section 32 of the act of March 31, 1879 (Acts 1879, p. 142), which provided that "The *per diem* of township trustees shall be as follows, to-wit: For each actual day's service they shall be allowed, be paid out of the township fund, $2.00 : *Provided*, That for all services as overseer of the poor, said township trustees shall be paid out of any funds in the county treasury not otherwise appropriated, on the order of the board of county commissioners." The alleged repealing statutes each contained the provision "That each trustee of any township in this State shall receive for the time he is necessarily engaged in the discharge of his duties, the sum of two dollars per day, and this shall be full compensation for all services that they shall in any capacity and in any manner perform." By the same sections, salaries are provided for trustees in townships having populations from seventy-five thousand to one hundred thousand. Laws in conflict with these

provisions are expressly repealed, but there is no provision expressly or by implication repealing the former provision, that made by the acts of 1879, *supra*, for the payment of such *per diem* from the township fund, and as overseer of the poor from the county treasury.   As we said in the original opinion, the poor system is distinctly a county system in the manner and source of its support, and this is verified by reference to the statute, R. S. 1894, section 8142 to section 8190.   By section 8145 the support of the poor is expressly charged upon the counties and the boards of commissioners are directed to raise the moneys for that purpose.   This obligation extends to the transient as well as the permanent or resident poor.   Settlements by the overseer are made with the county commissioners and the moneys expended by him are drawn on the orders of the board from the county treasury.   Sections 8160, 8163, 8164, R. S. 1894. This theory of the law was clearly outlined both as to services performed and as to compensation in the cases of *Board, etc., v. Bromley*, 108 Ind. 158, and *Board, etc., v. Fischer*, 86 Ind. 139.   To take the charge of compensation to the overseer from the county and to place it against the township breaks the uniformity of the system as a county charge without any reason for so doing.   There being no reason for so doing, and the language of the act not enforcing an intention to do so, we cannot presume that the Legislature desired or intended to repeal the provision of the act of 1879, that compensation as overseer should be paid from the county treasury.

The law does not favor the repeal of statutes by implication, but requires clearly repugnant language to effect such repeal.   *Hunt v. Lake Shore, etc., R. W. Co.*, 112 Ind. 69 ; *Chamberlain v. City of Evansville*, 77 Ind. 542; *Water Works Co. v. Burkhart*, 41 Ind.

364; *Blain* v. *Bailey*, 25 Ind. 165; *Spencer* v. *State*, 5 Ind. 41.

We conclude, therefore, that the salary of the trustee, acting as overseer of the poor, is payable from the county treasurer, and that it is not a charge against the township fund.

It is further insisted that the office expenses of the trustee, such as blanks, records, lights, fuel, office rent and attorney's fees constitute an expenditure in which the urban and the suburban population of a township are interested in common, and that they constitute a charge against the township fund. Counsel have not advised us as to the authority under which a trustee may incur these various items of expense and charge them to the township fund. We know of no statutory provision authorizing the expense of office, fuel and lights, and conclude, therefore, that no authority exists. *Board, etc.,* v. *Axtell*, 96 Ind. 384; *State, ex rel.,* v. *Mills*, 142 Ind. 569.

If blanks and records are required they are chargeable to the fund in whose interest they are required to be kept, and are not a charge against the united urban and suburban population unless required for the united purposes of such populations, and these we hold do not exist. As to attorney's fees, if the employment is authorized at all, and is on behalf of the roads, it would be a charge to the road fund, and if on behalf of the schools, a charge against the school fund, etc. But without some joint interest existing between such populations, there could be no joint liability and no necessity for a joint fund. If, however, any or all of such expenditures are proper, they are such as to enable the trustee to assign them to the particular interest requiring them. Their existence does not prove that both populations must bear them jointly. It is suggested,

also, that a service performed for the people of the cities and those of the country is that of making a registry of dogs as required by the acts of 1891, page 453. That act was approved March 5, 1891, and, by its first, sixth, and eighth sections, created a method for the taxation of dogs to the exclusion of all other methods of taxation for such animals.

On the 6th day of March, 1891, a later act was approved (Acts 1891, p. 199), sections 47 and 53 of which provided another and antagonistic method of taxation for such animals. The latter act repealed the former by necessary implication, and the services of the trustee contemplated by the former acts, are not required to be performed.

It is further contended that the trustee is required to perform for such two populations, in common, the service of controlling the township library, and to this proposition are cited sections 4527 to 4533, R. S. 1881; 6018, et seq., R. S. 1894.

These sections are from the general school law of March 6, 1865, Acts 1865, p. 1. By section 132 of the act, the libraries are denominated "township school libraries." They were purchased, not by the townships, but by the State, and were distributed to the townships on the basis of school population. The trustees are required "at the commencement of each school term, at each school house in their respective townships, to cause a notice to be posted up, stating where the library is kept, and inviting the free use of the books thereof by the persons of their respective townships," etc. Every implication from the provisions of the act is, that the Legislature intended the library system to constitute a part of the educational or common school system of the State, and that the service to be performed by the trustee, in connection therewith, is in his capacity as school

trustee. This conclusion is aided by the provisions, in other laws: 6013, 6014, 6015, 6016, 6017, R. S. 1894; .Acts 1891, p. 35, for the establishment, maintenance, and control of city and town libraries on behalf of such corporations independently of the civil or school townships. Very clearly, we think, the attention, if any, which a trustee may devote to the township school libraries is not a service for, or in which the population of a city within the civil township is interested, or may be taxed to support. The thirty years which have elapsed since such libraries were established, and during which no funds have been provided for their renewals, and additions have, in most instances probably, made such libraries institutions of the past, and have rendered the provisions of the act of 1865, as to trustee's care, a dead letter. In any event, the service required is on behalf of his school township, and if no compensation is provided from the school revenues, a question upon which we venture no opinion, that fact should be no reason for taxing populations not within the school township, to raise funds to pay such compensation. Again, counsel discuss what they claim to be an injustice to the suburban populations, to require their property to bear the entire burden of taxation for a township fund. It is upon the theory that the benefits derived from the sources to which such fund is expended accrue to such populations exclusively, that such burden is required to be so borne. If those not benefited shared the burdens the injustice would result to them.

To insist that, as to the gathering of the township fund, the urban population, though not sharing in the benefits should share its burdens, supplies equally the the argument for contending that the suburban population should aid in supporting the schools, and the streets and alleys of the cities. Such a contention, how-

ever, would make the injustice of such a rule manifest to the members of the suburban population. After a second full investigation of the question, we are convinced that we were not in error in our original conclusions. The petition for a rehearing is overruled.

Filed November 5, 1895.