## BYRAM *v.* THE BOARD OF COMMISSIONERS OF MARION COUNTY.

[No. 17,587.   Filed June 9, 1896.]

TAXATION.—*Assessment of Property Within a Municipal Corporation to Build and Repair Gravel Roads.*—*Statute Construed.*—Under section 6868, Burns' R. S. 1894 (section 5104, R. S. 1881), the whole county is a taxing district for the purpose of raising money to build and keep in repair free gravel roads or turnpikes, and property within a municipal corporation in such county is not exempt from taxation for such purposes, although the gravel roads or turnpikes are situated wholly without the limits of such corporation.

FREE GRAVEL ROADS.—*Taxation of City Property for the Repair Of.*—*Statute Construed.*—The act of March 6, 1891, amending section 61, of an act approved March 14, 1867, declaring that no property within the city shall be taxed for the purpose of repairing any road or bridge without the limits of the city, does not affect the power given by the act of March, 1879, to tax all property within a county for the repair of free gravel roads or turnpikes, such amendatory act has reference only to the exemption of city property from the ordinary road tax.

SAME.—*Taxation of City Property for the Repair Of.*—*Validity of Statute.*—Whether or not property within a city is benefited by the repair of free gravel roads and should be taxed in common with other property of the county for that purpose, is a question for the legislature and not for the courts.

From the Marion Circuit Court.   *Affirmed.*

*Blackledge & Thornton,* for appellant.

*A. V. Brown, A. G. Smith,* and *C. A. Korbly,* for appellee.

McCABE, J.—This appeal arises out of a claim filed by the appellant, before the board of commissioners of Marion county, on the 16th day of March, 1895, to recover from said county, or to secure the refunding by said county to him, of $82.93, for taxes paid by him on his real and personal property, situate within the

corporate limits of the city of Indianapolis, where appellant resided; said taxes had been levied by the auditor of Marion county, upon a certificate filed with him by the board of turnpike directors of said county, organized under the statute providing for the repair of free turnpike roads in the various counties of the State, approved March 24, 1879, and amendments thereto. These taxes are alleged to be those assessed, for the purpose aforesaid, for the years 1888 to 1893, inclusive. The commissioners refused to allow the claim, and the claimant appealed to the circuit court, where the appellee demurred to the claimant's claim, or complaint, for want of sufficient facts. The circuit court sustained the demurrer, and the plaintiff declining to plead further, the appellee recovered judgment upon demurrer for costs and that the plaintiff, the claimant, take nothing by his suit.

From that judgment this appeal is prosecuted by the appellant.

The learned counsel for the appellant say: "The questions involved in the case are two: First. Can property within a municipal corporation, under our present statutes, be assessed with taxes by a county board of turnpike directors to repair and maintain, and pay for material for free gravel roads or turnpikes, situated wholly without the limits of such corporation, although within the county?

"Second. Is a statute authorizing a levy upon the property situated within such municipal corporation, to repair free turnpikes without its limits, void?"

The appellant's counsel contend that the first question must be answered in the negative, and hence the levy complained of must be held unauthorized, and the taxes be refunded; and if that question is answered in the affirmative, the second question must

be answered in the negative, because such statute would be unconstitutional.

The exact question here involved was decided by this court, adversely to appellant's contention, in *Read* v. *Yeager, Aud.*, 104 Ind. 195.

It is contended, however, on behalf of the appellant, that the constitutional question here raised and discussed was neither discussed nor decided in that case; and that if it had been, that case is practically overruled by *Kerlin* v. *Reynolds*, 142 Ind. 460, and *Taggart, Aud.*, v. *State, ex rel.*, 142 Ind. 668.

Neither the constitutionality nor the construction of such a statute was involved in *Kerlin* v. *Reynolds, supra.* Nor was the statute there involved at all similar to the one here involved. The one here involved, provides for the repair of the free turnpike roads of the county. The first section of the act (Acts 1879) provides that the commissioners of the county are constituted a board of turnpike directors, and, among other things, it makes it their duty to certify to the county auditor, on or before the first Monday in June in each year, the amount of money necessary to keep such free turnpikes in good repair. R. S. 1894, section 6868 (R. S. 1881, section 5104).

The next section provides, among other things, that "upon the issue of the certificate, as mentioned in the first section of this act, the county auditor shall levy upon all taxable property of said county such sum, not to exceed one (1) mill upon each dollar of such taxable property for every ten (10) miles of free turnpike roads completed in said county, the receipts thereof to constitute a turnpike fund in the county treasury, to be paid out only upon the order of the county auditor issued upon the certificate of the board of turnpike directors, properly attested by the clerk of said board."

It is contended that the foregoing language, "all taxable property of said county," must be held to mean, all taxable property of said county outside of incorporated cities and towns in the county. And while it is conceded that *Read* v. *Yeager, supra*, decides the exact question against appellant's contention, it is insisted that that decision is overruled by the later cases already named above.

The question involved in *Kerlin* v. *Reynolds, supra*, was whether there was any statutory authority in a township trustee, in a township including within its boundaries an incorporated city, to levy taxes on property within the limits of such city and property taxable therein for ordinary township purposes. It was there said: "Our conclusion renders it unnecessary to consider the manner of making the levy since we have no doubt of the absence of any authority to make a levy for such purposes upon such property. The question does not depend upon the constitutional authority of the legislature to subject the property of the minor political subdivision to taxation for the purposes of the major division, for the reason that the legislature has not, so far as we have been able to learn, attempted by any existing legislation to exercise any such authority. * * * * There is no authority given to tax the people of a township, outside of the city, for the support of interests within and relating alone to the city in its distinct corporate capacity, and it may, in like manner, be said that those interests which are peculiar to the citizens and the property outside such city must find support alone from those whose interests they are, namely, those of the township as distinguished from those of the city. In the absence of affirmative legislation commingling such interests, dividing such burdens and providing that a

common officer shall protect and enforce them, we must hold that they are to be deemed separate and treated distinctly. * * * This conclusion does not, however, exclude the idea that there may be interests general and mutual as between the citizens and the property within the cities and within the civil township. * * * * For such purposes, and in view of such general and mutual interests, such citizens and such property would constitute a taxing district. Therefore, 'the nature of the tax will determine the district,' as said by Judge Cooley, in his work on taxation, p. 153. * * * * * We have no doubt, in the absence of a common interest between the two municipal corporations, the city and the township, this statute should be construed to apply to the property of the township as distinguished from that within the limits of the independent municipality, the city."

The taxing district by the statute, involved in the case now before us, is made to consist of the whole county. If it is not competent to make it consist of the whole county, then there is no way, under existing legislation, by which the free gravel roads of the county can be kept up and in repair. Such roads must be suffered to fall into decay for want of repairs if appellant's contention is upheld. Nor can it be justly said that the whole county is not interested in keeping such roads in repair, simply because there happens to be an incorporated city within the limits of the county. It is not denied that the whole county may be validly made the taxing district for such repairs if there is no incorporated city or town within its limits.

The legitimate result of appellant's contention is that an incorporated city, that is the flourishing city of Indianapolis, is not interested in keeping the gravel roads of the county in repair. If that proposition is

one that the courts can judicially know, then it is equally true that they can judicially know that keeping such roads in repair is not beneficial to any taxpayer of the county.

We see no reason why the whole county may not be validly made a taxing district for such purposes; just as the whole county may be and is lawfully made the taxing district to raise money with which to build bridges anywhere in the county, as has always been lawfully done. R. S. 1894, sections 3275, 3282 (R. S. 1881, sections 2885, 2892).

Accordingly, it was justly held in *Read* v. *Yeager*, *supra*, that: "Taxable property of the appellant within the city of Evansville is certainly taxable property in Vanderburgh county."

Nor did *Taggart* v. *State, ex rel., supra*, involve the constitutionality or construction of any statute similar to the one here involved. The holding there was that the statutes on the subject should be so construed as to require the surplus dog tax fund belonging to Center township, in Marion county, to be so divided as to give to the school corporation of the city of Indianapolis its proportion thereof, according to its number of children of school age. This was because that city formed a part of the taxing district composed of the whole township, thus entitling the city to share in the fund it had helped to raise by the tax it had paid. That conclusion not only does not lend any sanction to appellant's contention, but if it has any bearing, is against such contention.

But it is suggested that the case now before us is distinguishable from *Read* v. *Yeager*, *supra*. The special charter by which the city of Evansville was then governed was passed by the legislature in 1847. It provided, among other things, that "No person residing in said city shall be compelled or required to

work on any road without said city, nor shall any property lying or being within the city be taxed for the purpose of making, opening, improving, or repairing any road   *   *   *   without the limits of said city."

In the case referred to it was said of this provision that, "It is manifest, however, from the provisions we have quoted from   *   *   *   such city charter, that the exemption from taxation therein provided is an exemption only from the ordinary road tax, which the township trustee, with the concurrence of the board of commissioners of his county, under section 5066, now in force, is authorized to assess, and which has been authorized by previous legislation for more than thirty years."

It is further suggested that the act approved March 6, 1891, amending section 61, of the act approved March 14, 1867, incorporating cities, R. S. 1894, section 3623 (R. S. 1881, section 3161), was passed since our free gravel road acts were passed, and if inconsistent therewith must be held to modify the section already referred to as authorizing the tax here involved. Said section 61, of said act of 1867, as amended by the act of 1891, provides, among other things, that: "No person residing in said city shall be required or compelled to work on any road without the city; nor shall any property lying or being within the city be taxed for the purpose of working, opening, improving or repairing any road or bridge without the limits of said city."

These provisions are word for word as they were in the section of the act of 1867, before the amendment. Acts 1867, p. 63; R. S. 1881, section 3161. The amendment made other changes in the section, but none as to the provisions quoted. Our first free gravel road law was not passed until ten years after the act of

1867 was passed. Acts 1877, p. 82; R. S. 1881, sections 5091, 5114.

From these facts, as well as from the language of the provision quoted under the authority of *Read* v. *Yeager*, *supra*, the legislature meant by that provision in the act of 1867, only to exempt the property in the city from the ordinary road tax, referred to in that case. Indeed, the provision in question, as it then existed in the act of 1867, was in full force at the time of the decision in that case, and the holding there necessarily construed the provision as we now do, unless it be that such provision has no application to a city governed by a special charter. That, however, would be fatal to appellant's contention, as the city of Indianapolis is governed by a special charter. R. S. 1894, sections 3772-3904.

But we are to inquire what effect the amendatory act had on the provision quoted, in carrying it forward into the amendatory act. The provisions quoted were operative of themselves without regard to the balance of the amendatory section.

It was said by this court, in the case of *Thomas* v. *Town of Butler*, 139 Ind. 245, at page 252 *et seq*, that: "It is true, as stated by some of the authorities above mentioned and cited by appellant, that so far as any operative part of the old act has been brought forward and re-enacted by the new act, it is not repealed, and is, as stated by Southerland, continued in operation.   *   *   *   *   It has been frequently held in this and other courts, that the re-enactment of a statute does not operate as a repeal of the former law, but that the effect of the new act is to continue the old act in force. *Gorley* v. *Sewall*, 77 Ind. 316, and cases there cited; *Reynolds, Aud.,* v. *Bowen, Admr.*, 138 Ind. 434, and numerous authorities there cited.   *   *   *   In the revision of laws it is often essential to bring forward into the

new act many operative portions of the old statute without change or modification, and it is often of the utmost importance to public and private interests that the continuity of the operation of the re-enacted statute shall not be broken by the re-enactment thereof. To hold the operation of the re-enacted statute broken by the re-enactment is to hold, in many cases, that public interests and private rights are swept away beyond the possibility of repair. The principle upon which the continuity of operation of the re-enacted statute rests is the manifest legislative intention. * * * When they bring forward into the new act such operative portions of the old act, they thereby indicate the legislative will and intent that such provision shall continue to be the law, not that it shall cease to operate, but that its operation as the law shall continue as before."

Therefore, the provision quoted continues in force just as it was before the amendatory section was enacted. It gets its force and effect from its original enactment in the act of 1867. And that effect, we have seen, exempted city property from nothing but the ordinary road tax, such as was referred to in *Read* v. *Yeager, supra,* and does not have the force and effect to exempt property in cities from taxation for the repair of the free gravel roads of the county. *Read* v. *Yeager, supra.*

It is, however, contended if the section of the gravel road statute quoted, properly construed, authorized the assessment complained of, and we think it does, that it is unconstitutional, because the property within the city of Indianapolis is not benefited by the repair of the gravel roads of the county. Conceding, without deciding, that such benefit is essential to the constitutionality of such a tax, we are of opinion that that was a question resting within the legislative

domain to determine. As was said in *People* v. *Brooklyn,* 4 N. Y. 428 (55 Am. Dec. 266): "In local taxation, however, for special purposes, the local benefits may in many cases be seen, traced and estimated to a reasonable certainty. At least this has been supposed and assumed to be true by the legislature, whose duty it is to prescribe the rules on which taxation is to be apportioned; and whose determination of this matter, being within the scope of its lawful power, is conclusive. In the case of *The People* v. *Brooklyn,* before referred to, it was said that a tax to be valid must be apportioned 'upon principles of just equality,' and upon all the property in the same political district; and that this is a fundamental principle of free government, which, although not contained in the constitution, limits and controls the power of the legislature. This is new and it seems to me to be dangerous doctrine. It clothes the judicial tribunals with the power of trying the validity of a tax by a test neither prescribed nor defined by the constitution. If by this test we may condemn an assessment apportioned according to the relation of burthen and benefit we may with far better reason condemn a capitation tax on the ground that numerical equality is not just equality; or a general property tax, for a local object, because it compels one portion of the community to pay more than their just share for the benefit of another portion. All discriminations in the taxation of property, and all exemptions from taxation on the grounds of public policy, would fall by the application of this test. If this doctrine prevails it places the power of the courts above that of the legislature in a matter affecting not only the vital interests, but the very existence of the government. It assumes that the apportionment of taxation is to be regulated by judicial, and not by legislative discretion. It obstructs the exercise of powers

which belong to, and are inherent in the legislative department, and restrains the action of that branch of the government in cases in which the constitution has left it free to act."

To the same effect are *Gilson* v. *Board, etc.*, 128 Ind. 65, and authorities there cited.

The constitutionality of similar legislation seems to be settled in this State. *Turpin* v. *Eagle Creek, etc., Grav. R. Co.*, 48 Ind. 45; *Law* v. *Madison, etc., Turnp. Co.*, 30 Ind. 77; *Ricketts* v. *Spraker*, 77 Ind. 371.

In *Goodrich* v. *Winchester & Deerfield Turnp. Co.*, 26 Ind. 119, the constitutionality of a similar statute was involved, and this court there said: "In the case in judgment the legislature has determined, and this matter is within its power, that this is a proper subject for taxation, and that the burden imposed is the just share of each person embraced in the provisions of the act. This the legislature has the right to do, unless restrained by some provision of the constitution.  * *  * We hold the law valid on the ground that it imposes a tax for public purposes, within the constitutional power of the legislature."

It was said in *State, ex rel.*, v. *McClelland*, 138 Ind. 395, on p. 399, that: "With the justice, the propriety, the policy, the advisability or desirability or undesirability of a statute, the courts can have nothing whatever to do, so long as the act does not infringe some provision of the constitution, State or Federal, or some valid treaty or law of Congress.  Such objections must be made to the Legislature. *Hedderich* v. *State*, 101 Ind. 564; Cooley's Const. Lim., 201–204."

Appellant's learned counsel have not pointed out any provision of the constitution which it is supposed the statute in question contravenes, either express or implied, and we know of none.

It has often been held by this court that until such

contravention by an act of the legislature is shown, it cannot be overthrown by the courts for unconstitutionality. *Robinson, Treas.,* v. *Schenck,* 102 .Ind. 307 (319); *State, ex rel.,* v. *McClelland, supra; State, ex rel.,* v. *Roby,* 142 Ind. 168.

The question of the constitutionality of the statute under consideration was necessarily involved, though not discussed, in *Read* v. *Yeager, supra,* and was necessarily decided against the appellant's contention. We adhere to that ruling. It follows that the circuit court did not err in sustaining the demurrer to the complaint.

The judgment is affirmed.